TURNER v. WASHINGTON REALTY CO.

(118 S. E., 30)

1. RECEIVERS—PAYMENT IN RECEIVERSHIP TRACEABLE TO DEBT FOR TAXES HELD PROPER.—A payment which was directly traceable to a debt for taxes, a paramount lien, *held* properly allowed.

2. PAYMENT—AMOUNT PAID CREDITED ON SECURED RATHER THAN UN-SECURED CLAIMS.—Where there was no special application of payments, *held,* that the amount paid by a custodian and receiver to a creditor, holding both secured and unsecured claims, must be credited on the secured claims.

3. RECEIVERS—COMPENSATION HELD WITHIN COURT'S DISCRETION.—Generally, a receiver's compensation is within the Court's discretion.

Before MAULDIN, J., Richland, October, 1922. Affirmed and modified.

Action by J. E. Turner against the Washington Realty Company and others. From an order confirming the report of a Special Master made upon an accounting by James A. Cathcart, custodian and receiver of certain property, plaintiff appeals. Affirmed, as modified.

*Messrs. Graydon & Graydon,* for appellant, cite: *Fraudulent title does not carry title to property or rents:* 20 Cyc., 361, 368, 626, 631. *Grantee in fraudulent deed must account:* 20 Cyc., 630. *Application of funds where they come into hands of party holding lien:* 104 S. C., 508; 6 S. C., 74; 20 S. C., 542; 27 S. C., 44; 32 S. C., 277; 37 S. C., 200; 73 S. C., 181; 38 S. C., 507. *When mortgage covers more than one debt proceeds must be applied pro rata:* 2 Rich. Eq., 63; 5 S. C., 58; 8 S. C., 129.

*Messrs. D. W. Robinson* and *D. W. Robinson, Jr.,* for respondent, cite: *Taxes are paramount claim:* 23 R. C. L., 97, 109; High, Receivers (4th Ed.), 798, 811, 945. *Rents and profits are personal property:* 19 S. C., 190; Code Proc. 1912, Sec. 349. *Application of payments must be made when paid:* 32 S. C., 104; 2 McC., 294; Bail. Eq., 342; 20 S. C., 34; 9 S. C., 349; 61 S. C., 137; 23 S. C., 354; 32 S. C., 277. *If debtor fails to direct, creditor may apply payment as he sees fit:* Bail. Eq., 430; Bail. Eq., 342; 1 McC., 368; 9 S. C., 349; 20 S. C., 34; 22 S. C., 279; 23 S. C., 354; 29 S. C., 434; 42 S. C., 104; 61 S. C., 137. *Creditor may make application of payment at any time:* Bail. Eq., 380; 12 S. C., 37; 9 S. C., 349; Bail. Eq., 433. *At least until judgment:* 20 S. C., 548; 20 S. C., 34; 42 S. C., 105. *If neither debtor nor creditor makes the application the Court will make it:* 74 S. C., 371; 20 S. C., 34; 2 Rich. Eq., 66; 85 S. C., 109. *Commissions to Receiver:* 48 S. C., 154; 23 R. C. L., 138.

June 13, 1923.

The opinion of the Court was delivered by Mr. Justice Cothran.

Appeal from an order of Hon. T. J. Mauldin, Circuit Judge, confirming the report of Special Master Quinn, made upon an accounting by James A. Cathcart, custodian of certain property and receiver. The accounting is an

offshoot of the case of *Turner v. Washington Realty Co. et al.* (S. C.), 118 S. E., 27, a full statement of the facts in reference to which may be found in the opinion of this Court recently filed.

After the death of Washington Clark in November, 1918, James A. Cathcart, a brother of Mrs. Clark, in February, 1919, took charge of the Law Building as custodian, presumably under authority of the parties interested in the coporation, Washington Realty Company, and collected the rents as custodian until June 1, 1921.

In the meantime, on March 24, 1920, Turner instituted the main action for the purpose of having the conveyance of the Law Building, which Washington Clark had executed to the corporation on June 13, 1916, declared in fraud of the rights of creditors; and on June 1, 1921, procured an order appointing Cathcart receiver of the Law Building property. From that time Cathcart, as receiver, had charge of the property and collected the rents.

The main action resulted in a decree by Judge Peurifoy, dated April 7, 1922, setting aside the deed and directing the property to be sold and the proceeds to be applied to certain mortgages and judgments. From that decree there was no appeal.

The sale was had on salesday in May, 1922, and the property was bid in by Turner. He failed to comply and it was readvertised for sale in June.

On May 9, 1922, an order was signed by Circuit Judge Townsend requiring Cathcart to make a full report of his actings and doings as custodian and receiver before him at Chambers on May 18, 1922.

Cathcart failed to appear in obedience to that order, and on June 20, 1922, Judge Townsend signed an order referring it to John F. Quinn, Esq., as Special Master, to take testimony and report upon the accounting, and requiring Cathcart to appear and make an accounting of matters connected with his management of the Law Building, both as

custodian and as receiver. References were accordingly held, beginning June 23, 1922, at which Cathcart appeared with his books and vouchers, and made an accounting, the statement of which, however, does not appear in the record for appeal. The Special Master reports:

"Mr. Cathcart appeared before me with his books, accounts, and checks, and has furnished a statement of his receipts and of his disbursements. He was asked to furnish, and has furnished, a statement of his receipts and disbursements while acting as agent for the building and before his appointment as Receiver in this case; also, another statement of his receipts and disbursements while acting as Receiver."

Neither statement appears in the report, or attached to it, or elsewhere in the record; and we are left to grope through a mass of detail and disconnected testimony to locate items of disbursements by Cathcart during the period he was acting as custodian of the property, February, 1919, to June 1, 1921, and as Receiver, June 1, 1921, to June 23, 1922. The report comes to no conclusion as to the correctness of Cathcart's accounting, the matter which was referred; in fact, that issue is sidetracked and the controversy is shifted to other matters not directly involved under the order of reference.

There have arisen the following controversies:

(1) Was the payment of $900.00 by Cathcart to W. A. Clark legitimate?

(2) Should the payments by Cathcart as custodian of the building, to Mrs. Clark, be applied to the secured or to the unsecured claims of Mrs. Clark?

(3) Should the payments by Cathcart as receiver to Mrs. Clark be applied to the secured or to the unsecured claims of Mrs. Clark?

The first question: The history of this transaction appears to be that on May 20, 1918, Washington Clark borrowed from W. A. Clark $645.00 and gave

his note therefor, secured by rent accounts of tenants of the
Law Building. This money was borrowed to pay off a
Sheriff's execution for taxes upon the property. On Feb-
ruary 20, 1920, Cathcart, as custodian or agent, gave his
note to Carolina National Bank for $945.00. He paid
the note for $645.00, which Washington Clark had given
to W. A. Clark, and applied the balance to a note for $300
which he (Cathcart), as custodian or agent, had given to
the bank on October 7, 1919, for money borrowed to pay
taxes and paving assessments. The $945.00 note was sub-
sequently reduced to $900.00, and in May, 1922, Cathcart,
as receiver, paid it off. The payment being directly trace-
able to a debt for taxes, a paramount lien, the credit was
properly allowed.

      The second question: The record shows that Mrs.
2   Clark was the owner of two mortgages on the Clark
      Law Building; the first known as the Melton mort-
gage, executed December 18, 1909, by Washington Clark
to Elizabeth C. Melton, and subsequently assigned to Mrs.
Clark, for $4,339.95, with interest from August 1, 1922;
the second executed October 22, 1915, by Washington Clark
to Mrs. Clark for $7,000.00. It was assigned to Carolina
National Bank as security for a note of $7,000.00. On
April 17, 1919, Mrs. Clark paid to the bank out of her
individual property $1,538.85, reducing the bank debt by
this sum. From that date Cathcart paid to the bank the
interest upon the balance, $5,461.15, but no interest was
paid upon the $1,538.85. Mrs. Clark claims interest upon
that amount. This bond and mortgage appears to have
been since acquired by the plaintiff, Turner. Mrs. Clark
also had a claim against Washington Clark, upon a note
for $7,000.00 executed in 1916 and secured by the pledge
of 248 (173?) shares of stock in the Washington Realty
Company.

Mrs. Clark contends, and the Special Master so found,
confirmed by the Circuit Judge, that the payments made by

Cathcart, as custodian and agent, prior to the receivership, to Mrs. Clark should be applied to the last-named note, that of Washington Clark to Mrs. Clark, secured only by the shares of stock, now worthless.

In view of the finding of the Special Master, "There was no special application of the payments," and of the positive and reiterated statements of Cathcart that the payments were made upon the mortgages held by Mrs. Clark, this conclusion cannot be sustained. The amount paid to Mrs. Clark by Cathcart as custodian is greatly confused in the testimony and in the report. Counsel for Turner place it at $2,341.42; counsel for the respondents, at $1,916.94. Life is too short to wade through this mass of details and supply what should have appeared clearly in the report. This matter must, therefore, be left open for decision where it properly belongs, in the final adjustment of Mrs. Clark's mortgage interest. We intend to simply announce the conclusion that all payments made by Cathcart as custodian to, for, or on account of Mrs. Clark, must be credited upon the mortgages held by her covering this property.

The third question: It is conceded, as found by the Special Master and confirmed by the Circuit Judge, that all payments made by Cathcart as Receiver, to, for, or on account for Mrs. Clark, must be applied to the mortgages held by her covering this property.

The observations made above are applicable alike to the amount of these payments. Counsel for Turner place it at $1,227.28; counsel for respondents, $804.40; the Special Master, $844.40.

The amounts due to Mrs. Clark upon the two mortgages are also reserved for determination in the appropriate proceeding.

As to the Receiver's compensation: the general rule is that it is within the discretion of the Court. *Mann v. Poole*, 48 S. C., 154; 26 S. E., 229; 23 R. C. L.,

138. *Carroll v. Cash Mills* (S. C.), 123 S. C., 506, 117
S. E., 184. No abuse of that discretion appears.

The judgment of this Court is that the decree of the
Circuit Court be affirmed except as herein modified.